Filed 11/13/25  EJA Associates v. Ali CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| EJA ASSOCIATES L.P., | B342296 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21SMCV01421) |
| v. | |
| MUHAMMAD ALI et al., | |
| Defendants and Appellants. | |


APPEAL from an order of the Superior Court of Los Angeles County, Mark H. Epstein, Judge.  Affirmed.

Law Office of Anju Multani and Anju Multani for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

# INTRODUCTION

Muhammad and Shaila Ali appeal from the trial court's order denying their motion to vacate and set aside a default judgment EJA Associates L.P., their former commercial landlord, obtained against them. The Alis argue the trial court erred in denying their motion because the default judgment is void. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Alis Breach a Commercial Lease*

In April 2016 the Alis signed a five-year lease with EJA to rent commercial space for their business, Sunsations International, at 1331 Third Street Promenade, in Santa Monica. The monthly base rent was $25,000. The Alis also owned Sunsations stores at 1407 Third Street Promenade and 395 Santa Monica Place.

The Alis stopped paying rent for 1331 Third Street Promenade in April 2020 and vacated the premises in November 2020. In August 2021 EJA sued the Alis for breach of the lease. EJA attached to the complaint a copy of the lease, as well as personal guaranties signed by Muhammad and Shaila, and alleged the Alis owed $338,000.

EJA submitted proofs of service stating that on September 1, 2021 a registered process server served both Alis by substitute service at 1407 Third Street Promenade (the location of one of the Alis' other Sunsations stores) by, after two attempts at personal service, leaving the summons and complaint with a store clerk identified as "Arlington 'Doe,'" described as a

30-year-old, four-foot 10-inch tall, 130-pound Hispanic female with brown hair and brown eyes, and by mailing the summons and complaint to the same address.

Several days later, on September 6, 2021 Muhammad sent a general partner of EJA a text stating: "Hey John, I received a lawsuit which was expected from a immoral person like you i will take this to the last lever i have broker witnesses on which you didn't let me sublease the property also harassment you created to my wife and also to my employees not mentioning the water damage of roughly 200 K." There is no evidence EJA responded to Muhammad's text.

### B. *EJA Obtains a Default Judgment*

The Alis did not respond to the complaint. On October 19, 2021 the court entered their defaults. On December 17, 2021 the court entered a default judgment in favor of EJA and against the Alis in the amount of $338,000, plus interest and $15,571.17 in attorneys' fees and costs.

Seven months later, on July 19, 2022, counsel for EJA received an email from an attorney for the Alis, with a subject line of "EJA v ALI Case no. 21SMCV01421" (i.e., this case). Counsel for the Alis wrote: "I represent Muhammad and Shaila Ali. [¶] We have just learned that a default and default judgment was entered in the referenced matter on or about 12/17/2021. [¶] Further investigation has revealed that the Summons and Complaint were 'sub served' and a default was based on that service. [¶] I intend to move to set aside the default and default judgment as being void in as much as service was defective. There is a plethora of case law on that, so I will not reference that at this time. As the judgment is void, there is

3

no time limit to seeking to set it aside.  [¶]  Let me know if you are willing to stipulate to setting the default and default judgment aside, to allow this matter to proceed on its merits."

Counsel for EJA responded by referring to Muhammad's September 6, 2021 text and stating the Alis were "properly served and had actual notice of the lawsuit."  Counsel for EJA stated:  "Based on this and additional reasons, EJA will not stipulate to set aside the default judgment."  Counsel for the Alis did not respond. Nothing further happened in 2021.

Nothing happened in 2022.

Nothing happened in 2023.

C.    *The Trial Court Denies the Alis' Motion To Set Aside and Vacate the Default Judgment*

In April 2024 the Alis filed a motion to set aside and vacate the defaults and the default judgment.  The Alis asked the court to vacate the default judgment under Code of Civil Procedure section 473, subdivision (b),[1] for inadvertence, surprise, or excusable neglect; under section 473.5, subdivision (a), for lack of actual notice; and section 473, subdivision (d), because the default judgment was void.  The Alis argued, among other things, that the trial court had "inherent power to set aside a void judgment whether or not it is void on its face"; that "an examination of the judgment roll shows a multitude of deficiencies, some on their face and some on review of the pleadings filed"; that the "service of summons and complaint is void, as it was never personally served on the defendants" because "[s]ervice was purportedly made at a location other than

---

[1]    Statutory references are to the Code of Civil Procedure.

4

what was the defendants' 'home store' or 'residence'"; and that the court had "no authority to render judgment on the basis of substituted or constructive service of the summons when statutory requirements have not been strictly complied with." Muhammad and Shaila stated in their supporting declarations that they were not personally served with the summons or complaint and that the address stated on the proofs of service, 1407 Third Street Promenade, was not "the address for the premises which were leased and the subject of this action." They also said that they did not have an employee named "Arlington" and that the proofs of service identified the person served as a clerk, not a manager.

In opposition to the motion EJA argued the Alis could not obtain relief under section 473, subdivision (b), or section 473.5, subdivision (a), because they filed their motion after the six-month and two-year deadlines, respectively, and they had actual knowledge of the lawsuit in July 2022. EJA argued the Alis could not obtain relief under section 473, subdivision (d), because they did not file their motion within a reasonable time and the judgment was not void.

After giving the parties the opportunity to file supplemental briefs, the trial court denied the Alis' motion. The court ruled the Alis were not entitled to an order vacating the default judgment as void because the "proof of service shows service by substitute service followed up by mail. That is proper on its face. Defendants assert that the substitute service was not proper because the person on whom service was actually made is not known to them or was not authorized to accept service of process. Maybe so, but that is not apparent from the judgment roll; it is only apparent upon consideration of the declaration.

5

Therefore, the judgment is not void; it is merely voidable."  The court acknowledged the Alis' argument "that the lease—which is attached to the complaint—has a particular address to which notices should be given, and that is not the address on the proof of service.  That much is true and at least arguably within the judgment roll.  But the notice address for the lease is not dispositive here.  Service of process is not governed by the lease; only service of notices required under the lease are so governed.  Service of process is governed by the Code of Civil Procedure.  Here, those requirements were met—at least on the face of the judgment roll."

The court also ruled the Alis were not entitled to relief under section 473.5, subdivision (a), because their motion was filed more than two years after entry of the default judgment and because they had actual notice of the judgment almost two years before they filed the motion.  The court stated:  "Of the most concern is the fact that plaintiff establishes that defendants were aware of this problem in July 2022.  There is an email exchange showing that defendants were aware of the default judgment and a statement that defendants would shortly file a motion to vacate.  Notwithstanding that actual knowledge and the promise to file a motion quickly, the motion was not filed until 21 months after the email acknowledging the problem.  That fact, which defendants neglected to mention in their moving papers, is fatal to this motion."

The trial court also denied a motion by the Alis for reconsideration.  The Alis timely appealed from the order denying

their motion to vacate and set aside the defaults and default judgment.[2]

## DISCUSSION

A.    *Applicable Law and Standard of Review*

"Section 473, subdivision (d), provides a trial court 'may, on motion of either party after notice to the other party, set aside any void judgment or order.'  '[I]nclusion of the word "may" in the language of section 473, subdivision (d), makes it clear that a trial court retains discretion to grant or deny a motion to set aside a void judgment [or order].'  [Citation.]  However, the trial court 'has no statutory power under section 473, subdivision (d) to set aside a judgment [or order] that is not void . . . .'  [Citation.]  Thus, the reviewing court 'generally faces two separate determinations when considering an appeal based on section 473, subdivision (d): whether the order or judgment is void and, if so, whether the trial court properly exercised its discretion in setting it aside.'  [Citation.]  The trial court's determination whether an order is void is reviewed de novo; its decision whether to set aside a void order is reviewed for abuse of discretion." (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020; see *W. Bradley Electric, Inc. v. Mitchell Engineering* (2024) 100 Cal.App.5th 1, 12.)

"In determining whether an order is void for purposes of section 473, subdivision (d), courts distinguish between orders

---

[2]    An order denying a motion to vacate a judgment under section 473 is appealable.  (*Jackson v. Kaiser Foundation Hospitals, Inc.* (2019) 32 Cal.App.5th 166, 171; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 1004, 1009.)

7

that are void on the face of the record and orders that appear valid on the face of the record but are shown to be invalid through consideration of extrinsic evidence. 'This distinction may be important in a particular case because it impacts the procedural mechanism available to attack the judgment [or order], when the judgment [or order] may be attacked, and how the party challenging the judgment [or order] proves that the judgment [or order] is void.' [Citation.] [¶] An order is considered void on its face only when the invalidity is apparent from an inspection of the judgment roll or court record without consideration of extrinsic evidence. [Citations.] There is no time limit to attack a judgment void on its face. [Citations.] If the invalidity can be shown only through consideration of extrinsic evidence, such as declarations or testimony, the order is not void on its face." (*Pittman v. Beck Park Apartments Ltd.*, *supra*, 20 Cal.App.5th at pp. 1020-1021.)

B. *The Default Judgment Is Not Void*

In arguing the default judgment is void the Alis concede that, for a judgment to be void, the "invalidity must be apparent from the judgment roll" and that the "judgment roll consists of summons, complaint, proof of service, request for entry of default, request for default judgment, and the judgment." (See § 670, subd. (a) ["[i]n case the complaint is not answered by any defendant, the summons, with the affidavit or proof of service; the complaint; the request for entry of default with a memorandum indorsed thereon that the default of the defendant in not answering was entered, and a copy of the judgment" "shall constitute the judgment roll"]; see, e.g., *OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1328,

8

fn. 2.)  In particular, the Alis contend the lease, which is attached to the complaint, is "properly part of the judgment roll," a proposition we assume for this appeal is correct.  Nevertheless, the default judgment is not void.

The Alis argue the judgment roll shows the default judgment is void because (1) the proofs of service state EJA served the Alis "at a location other than what was [their] 'home store' or 'residence'"; (2) they do not have an employee named "Arlington"; (3) the Code of Civil Procedure requires three attempts at personal service before the plaintiff can serve the defendant by substitute service, and EJA's process server made only two attempts; and (4) EJA did not serve the complaint at the address identified in the lease as the address for delivery and mailing of notices under the lease.  All four arguments are meritless.

First, the proofs of service state EJA served the Alis at one of their stores on the Third Street Promenade.  The process server stated in his declarations of diligence "Arlington Doe," the store clerk, said that the Alis owned the store, that they owned "a few stores," but that they were "not in at the moment." A business address is a proper address for serving a defendant, even if the defendant has other business addresses or residences. (See § 415.20, subd. (b) ["a summons may be served by leaving a copy of the summons and complaint at the person's . . . usual place of business"]; Judicial Council of Cal., com. to § 415.20 ["The term 'usual place of business' includes a defendant's customary place of employment as well as his own business enterprise."]; see also *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1435 [the Judicial Council's comment is "highly persuasive evidence of the Legislature's intent regarding

9

the proper interpretation of [section 415.20,] subdivision (b)"].) That (according to the store clerk) the Alis were "not in at the moment" the process server attempted to serve them and may have been at another of their stores does not show a lack of diligence.  The Code of Civil Procedure did not require EJA to determine which of the Alis' stores was the "home" or "main" store; one of their stores was enough.

Second, the proofs of service showed service on a store employee named semi-fictitiously and described by physical characteristics.  That was entirely proper.  (See *First American Title Ins. Co. v. Banerjee* (2022) 87 Cal.App.5th 37, 43 [substitute service was proper where the proof of service described the person served as "'"John Doe" (refused to state name—50 year old East Indian male, grey hair, 5'9", 170 pounds), co-resident'"]; *Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 183 [because "[p]ersons in apparent charge of businesses and residences often refuse to give their true legal names," it is "an accepted practice to name such a person as 'John Doe' or similar fictitious name, or by description"].)  Whether the Alis have an employee named "Arlington" who matches the process server's description cannot be determined on the judgment roll.  True, the Alis "affirm[ed]" in support of their motion to vacate "there was no employee by the name stated on the proof of service."  That affirmation, however, was in their declarations, something the court cannot consider in determining whether a judgment is void.  (See *California Capital Ins. Co. v. Hoehn* (2024) 17 Cal.5th 207, 216, fn. 3 ["To prove that a judgment is void on its face, the party challenging the judgment is limited to the judgment roll, i.e., no extrinsic evidence is allowed."]; *Braugh v. Dow* (2023) 93 Cal.App.5th 76, 87 ["If the invalidity can be shown only through consideration of extrinsic

10

evidence, such as declarations or testimony, the order/judgment is not void on its face."]; *Kremerman v. White* (2021) 71 Cal.App.5th 358, 370 [same].)

Third, section 415.20, subdivision (b), authorizes the plaintiff to serve the complaint by substitute service if "a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served."  Reasonable diligence means two (as here) or three attempts.  (See *Rodriguez v. Cho* (2015) 236 Cal.App.4th 742, 750 ["'Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as "reasonable diligence."'"]; *American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 389 [same]; *Espindola v. Nunez* (1988) 199 Cal.App.3d 1389, 1392-1393 ["'[o]rdinarily . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substitute[ ] service to be made,'" and unlike service by publication, substitute service does not require the plaintiff "to show exhaustive attempts to locate the defendant"].)

Fourth, it is true EJA served the Alis at their store at 1407 Third Street Promenade, Santa Monica, not at 349 North Baker Privado, Ontario, the address listed in the lease as the Alis' address for delivery and mailing of notices under the lease. Neither California law nor the lease, however, required EJA to serve the Alis with the summons and complaint at the address stated in the lease.  As the trial court ruled, the Code of Civil Procedure, not the terms of a lease, governs service of process. (See *Kremerman v. White*, *supra*, 71 Cal.App.5th at p. 371 ["'[c]ompliance with the statutory procedures for service of process is essential'"]; *Crane v. Dolihite* (2021) 70 Cal.App.5th

11

772, 784 [same].) Moreover, paragraph 23 of the lease (on which the Alis rely) states that all "notices required or permitted by this Lease or appliable law shall be in writing and *may* be delivered in person . . . or *may* be sent by" mail to the addresses of the parties stated in the lease. (Italics added.) Not that they must. (See *Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 499 ["Even to attorneys, the word 'may' ordinarily means just that. It does not mean 'must' or 'shall.'"]; *Tucker v. Pacific Bell Mobile Services* (2010) 186 Cal.App.4th 1548, 1561 ["use of the word 'may' denotes a discretionary choice"].) Code of Civil Procedure aside, paragraph 23 did not, contrary to the Alis' primary argument on appeal, require EJA to serve the Alis at the address specified for notices in the lease.

The default judgment against the Alis may have been voidable, but it was not void. The trial court did not err in denying their motion to set it aside under section 473, subdivision (d). (See *W. Bradley Electric, Inc. v. Mitchell Engineering, supra*, 100 Cal.App.5th at p. 13 ["a judgment that is merely voidable is not subject to section 473, subdivision (d)"]; *First American Title Ins. Co. v. Banerjee, supra*, 87 Cal.App.5th at p. 44 ["'trial court has no statutory power under section 473, subdivision (d) to set aside a judgment that is not void'"].)[3]

---

[3] The Alis do not argue (or at least do not argue with any analysis in their brief) the trial court erred in denying their motions to set aside the default judgment under sections 473, subdivision (b), and 473.5, subdivision (a), both of which the trial court ruled were untimely.

12

C. *None of the Alis' Claims of Defects and Inconsistencies in the Judgment Roll Makes the Judgment Void*

The Alis also argue there are "inconsistencies in the judgment roll . . . that are grounds for setting aside and vacating the judgment." These miscellaneous challenges to the default judgment are equally meritless.

For example, the Alis contend the request for entry of default EJA filed on October 19, 2021 was incomplete because it did not "set forth any information in paragraph 2" of the Judicial Council form. That's because it was not supposed to. Paragraph 2 of the form, titled "Judgment to be entered," is not completed until the court has entered the defendant's default and the plaintiff is seeking a default judgment. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2025) ¶ 5:80 ["Paragraph '2' (judgment to be entered) . . . [is] not required to be completed for entry of defendant's default'"; it is "required, however, for entry of default judgment." (italics omitted)].) There was nothing wrong with EJA's request for entry of default.

The Alis argue EJA mailed the request for entry of default to their store at 1407 Third Street Promenade, rather than to the leased premises at 1331 Third Street Promenade. As discussed, however, the Alis' store at 1407 Third Street Promenade was a perfectly fine address for service and mailing of documents to the Alis. In addition, the Alis vacated the premises at 1331 Third Street Promenade in November 2020, long before EJA filed and served its request for entry of default in October 2021. There was no point in mailing court documents to the Alis at a store they had vacated.

13

The Alis also argue: "The request to enter default filed on 12/03/21 shows 'not entered' by the clerk. There are no other requests for default judgment form shown in the court's docket." The first statement does not accurately describe the document; the second is false. What EJA filed on December 3, 2021 was a request for entry of default judgment, not a request for entry of default, and the court rejected it because EJA forgot to fill out paragraph 5 of the Judicial Council form.[4] EJA filled out paragraph 5 in its October 19, 2021 request for entry of default, which the court entered, and its December 6, 2021 request for entry of default judgment.

And the Alis argue that EJA, in its request for entry of default judgment, asked for attorneys' fees of $13,762, but that the trial court awarded $15,571.17. Not quite. The court awarded $13,762 in attorneys' fees and $1,749.17 in costs. The $15,000 figure in the default judgment is the court's combined award of "[a]ttorneys' fees and costs." The court did make a $60 arithmetic error ($13,762 + $1,749.17 = $15,511.17, not $15,571.17). But that doesn't mean the entire judgment is void, and the Alis do not seek to correct the award by $60.

---

[4] Paragraph 5 of the form asks the plaintiff to state the action is not "on a contract or installment sale for goods or services subject to Civ. Code, § 1801 et seq. (Unruh Act)," a "conditional sales contract subject to Civ. Code, § 2981 et seq. (Rees-Levering Motor Vehicle Sales and Finance Act)," or "an obligation for goods, services, loans, or extensions of credit subject to Code Civ. Proc., § 395(b)." This action is none of these.

14

Finally, the Alis take issue with the amount of damages the trial court awarded, arguing the court should have awarded $325,000, not $338,000.  EJA sought $338,000 in its complaint, and the judgment does not award more than that.  Again, nothing void here.  (See § 580, subd. (a) ["[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint"]; *Sass v. Cohen* (2020) 10 Cal.5th 861, 878 ["in cases in which a plaintiff seeks money damages, section 580 limits a plaintiff's relief in default to the dollar amount that has been demanded in the operative pleading"]; cf. *Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1018  ["A default judgment greater than the amount specifically demanded in the complaint is void as beyond the court's jurisdiction."].)

You get the idea.  None of the Alis' assertions shows the judgment is void.  The trial court did not err in denying the Alis' motion to vacate and set aside the default judgment.


## DISPOSITION


The order is affirmed.


SEGAL, Acting P. J.


We concur:


FEUER, J.                          STONE, J.


15